UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERALD MOYHER,<br><br>             Petitioner,<br>v.<br><br>WARDEN SIEMINSKI, ET AL.,<br><br>             Respondents. | PRISONER<br>Case No. 3:07-CV-1540 (CSH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

HAIGHT, Senior District Judge:

Petitioner, a Connecticut inmate proceeding *pro se*, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for assaulting a police officer in the performance of his duties and interfering with a police officer in the performance of his duties. Petitioner asserts that he is "entitled to relief occasioned by the warrantless entry of his domicile" by police despite his and his spouses' refusal of consent to such entry. Petitioner also claims that the Connecticut Appellate Court erred in deciding that the record on appeal was inadequate to permit review of his unpreserved Fourth Amendment claim pursuant to *State v. Golding*, 213 Conn. 233 (1989). Respondents have moved to dismiss on various grounds including that the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), precludes habeas review of petitioner's Fourth Amendment claim. The Court agrees that *Powell* precludes federal habeas review of petitioner's Fourth Amendment claim and therefore grants the motion to dismiss.

I.     PROCEDURAL BACKGROUND

Petitioner was found guilty, after a jury trial, of assaulting a police officer in the performance of his duties and interfering with a police officer in the performance of his duties. On June 16, 2004, he was sentenced to a term of four years in prison, to be followed by six years of probation, with

special conditions. Petitioner appealed his conviction to the Connecticut Appellate Court, which affirmed the conviction in an opinion dated December 13, 2005. On March 24, 2007, the Connecticut Supreme Court denied petitioner's timely petition for certification for appeal. Petitioner filed his federal habeas corpus petition on October 18, 2007.

## II. FACTUAL BACKGROUND

On direct appeal, the Connecticut Appellate Court determined that the jury which convicted petitioner reasonably could have found the following:

> The defendant shared a home at 7 Hazel Terrace in Woodbridge with Doreen Storer and her son, Christopher Donahue. On June 13, 2003, in an area adjacent to the home, Sergeant Edward Thomas of the Woodbridge police department arrested Donahue on a charge of cruelty to animals. The charge arose out of Donahue's alleged mistreatment of a dog owned by the defendant. Donahue paged Storer, who, accompanied by the defendant, arrived at the scene some fifteen minutes later. In the meantime, Thomas had summoned an animal control officer, who had placed the dog in her car. Storer and the defendant then engaged in a heated verbal confrontation with Thomas, the animal control officer and ultimately with each other.
>
> Storer and the defendant then returned to their home and were heard yelling and screaming at each other. Fearing for Storer's safety, Thomas called another officer for assistance and entered the home. The defendant ordered Thomas to leave and pushed Storer into another room. When Thomas stood his ground, the defendant pushed him backwards and injured him in so doing. With difficulty, the defendant was subdued and handcuffed by Thomas and his fellow officer.

*State v. Moyher*, 92 Conn. App. 612, 613-14 (2005).

## II. DISCUSSION

Petitioner argues that he is "entitled to relief occasioned by the warrantless entry of his domicile" by police despite his and his spouse's refusal of consent to such entry. Petitioner described this claim with greater precision on direct appeal, stating:

> "Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality." Since the warrantless entry of [petitioner's] home was illegal, any testimony as to what the Officers saw and observed must be excluded

> from the trial of [petitioner]. Thus the testimony of the three police officers of what occurred when they tried to arrest [petitioner] should be excluded. The failure to exclude this testimony was not harmless error because [petitioner] was arrested and convicted based on evidence obtained as a result of this warrantless entry.

Petitioner's Brief on Direct Appeal at 17. Petitioner argued that this claim "involved [his] right to be free of illegal searches and seizures in his residence under The Fourth Amendment of the United States Constitution."

Even assuming *arguendo* that some of the evidence presented at petitioner's trial violated his Fourth Amendment rights, it does not follow that petitioner is entitled to federal habeas corpus relief. In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a *Fourth Amendment* claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 481-82.

In so holding, the Supreme Court considered both the justifications and costs of the exclusionary rule. The primary justification, the Supreme Court noted, is to deter police conduct that violates a defendant's Fourth Amendment rights. *Id*. at 486. Among the costs of the rule is the exclusion of evidence that "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Id.* at 490. Consequently, the Court noted, "[a]pplication of the rule . . . deflects the truth-finding process and often frees the guilty." *Id.* "[W]eighing the utility of the exclusionary rule against the costs of extending it to collateral review of *Fourth Amendment* claims," *id.* at 489, the Supreme Court concluded that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment *claim*, "the contribution of the exclusionary rule, if any, to the effectuation of the *Fourth Amendment* is minimal and the substantial

societal costs of application of the rule persist with special force." *Id.* at 494-95.  For while application of the exclusionary rule to collateral review would still operate to free the guilty, as the Supreme Court observed,

> there is no reason to assume that the specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned on collateral proceedings occurring years after the incarceration of the defendant.

*Id.* at 493.

In the wake of *Powell*, the Second Circuit developed a test to determine when a state prisoner has been denied "an opportunity for full and fair litigation of a *Fourth Amendment* claim." *See Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  The Second Circuit determined that review of Fourth Amendment claims in federal habeas corpus actions would be undertaken in only two circumstances: (1) "if the state has provided no corrective procedures at all to redress the alleged *fourth amendment* violations," or (2) "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id*. (citing *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977).

Petitioner does not contend that Connecticut failed to provide a corrective procedure to redress his alleged Fourth Amendment claim.  Nor could he.  Connecticut Practice Book §§ 41-12 through 41-17 provide procedures by which a criminal defendant may move to suppress evidence obtained as the result of an unlawful search and seizure.  Petitioner simply failed to file a motion to suppress.  Nor did he object on Fourth Amendment grounds to any of the State's witnesses's trial testimony.  Rather, petitioner raised the unpreserved issue for the first time on direct appeal.  The Appellate Court declined to consider petitioner's claim on the merits, finding that it lacked the record

to do so.

Although it can be said that petitioner did not fully litigate his alleged Fourth Amendment claim, all *Powell* requires is that a petitioner have been provided the *opportunity* to do so. *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."). Because Connecticut provides a procedure by which petitioner could have moved to suppress the complained-of testimony of the State's witnesses, petitioner does not come under the first exception to *Powell*'s general rule that Fourth Amendment claims are not reviewable in federal habeas corpus actions.

Petitioner also does not allege that an "unconscionable breakdown" occurred in the state's corrective mechanism. However, "a district court must review a *pro se* petition for collateral relief with a lenient eye." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (internal quotation marks omitted). This Court therefore construes petitioners second ground for federal habeas corpus relief – that the Connecticut Appellate Court erred in deciding that the record on appeal was inadequate to permit review of his unpreserved Fourth Amendment claim under *Golding* – as an allegation that an "unconscionable breakdown" occurred in the state's corrective mechanism at the level of the Connecticut Appellate Court.

Respondents argue that petitioner cannot meet the conditions of this second exception because "his election not to avail himself of the state's process by neglecting to file a motion to suppress is not an 'unconscionable breakdown' in the state's process." Respondent's Brief at 19.

However, it would be incorrect for this Court to focus its enquiry entirely at the trial level. *Powell*'s general rule against reviewing a Fourth Amendment claim in a federal habeas corpus action contemplates that the petitioner had an opportunity for full and fair consideration of his Fourth Amendment claim by the state courts at both the trial level and on direct review. *Powell*, 428 U.S. at 489. Although it is true that, had petitioner filed a motion to suppress before his trial, were the motion denied the Connecticut Appellate Court could not have declined to review the claim pursuant to *Golding*. Nevertheless, given that Connecticut has provided a procedure for the review of unpreserved claims, this Court will assume without holding that a breakdown in that procedure could constitute an "unconscionable breakdown" in the state's corrective mechanism entitling a petitioner to federal habeas corpus relief on a Fourth Amendment Claim.

In *Golding*, the Connecticut Supreme Court established the standard for reviewability of unpreserved claims. The *Golding* Court held that

> a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.

*Golding*, 213 Conn. at 239-40. Because a defendant's unpreserved claim would fail in the absence of any one of the above enumerated conditions, the *Golding* Court further held that the appellate court could respond to a defendant's claim "by focusing on whichever condition is most relevant in the particular circumstances." *Id.* at 40.

Here, the Connecticut Appellate Court focused on whether it had an adequate record before it to review petitioner's Fourth Amendment claim. In its analysis, the court did not dispute petitioner's claim that officers who entered his home did not have a search warrant, and explicitly held that the jury reasonably could have found that petitioner asked the officers to leave his home. *Moyher*, 92 Conn. at 614, 617. However, the court noted that "[t]he fourth amendment does not bar police officers, when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that a person within is in need of immediate aid." *Id.* at 617 (quoting *State v. Blades*, 225 Conn. 609, 618 (1993)). The court then considered that, "[i]f the defendant had filed a motion to suppress based on the officers' warrantless entry, the prosecutor would have had an opportunity to present factual evidence in support of the state's contention that the officers were confronted with emergency circumstances that justified their immediate entry into the home." *Id.* at 618. "In the absence of a hearing of record," the court concluded, "it would be pure speculation for us to decide whether the defendant's constitutional rights were violated by the three peace officers who entered his home without a warrant." *Id.*

This Court cannot say that the Connecticut Appellate Court erred in reaching its conclusion. First, "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). This Court must rather give deference to them. Moreover, this Court agrees with the Connecticut Appellate Court's reasoning. Although there was

testimony that the officers who entered petitioner's home did not have a search warrant, that petitioner asked them to leave, and that the officers nevertheless entered petitioner's home because they feared for the safety of Doreen Storer, more facts potentially could have been adduced on the later point had a hearing been held on a motion to suppress. It cannot be thought that a defendant, by declining to move for the suppression of evidence or to object to its admission at trial, should be able to lull the State into thinking that it need not argue for the admissibility of the evidence, all the while building his own case against its admissibility with which to blindside the State on direct appeal.

It might be said that the Connecticut Appellate Court's position vitiates the effect of *Golding* because a claim preserved at trial does not required *Golding* review and an unpreserved claim will be rejected on direct appeal because of the inadequate record occasioned by the defendant's failure to object or otherwise avail himself of procedures at trial. This, however, is not so. There are many situations in which a claim may be reviewable on direct appeal despite a defendant's failure to preserve it. Indeed, if the Fourth Amendment did not permit warrantless entries into premises, the record on appeal in this case might have been adequate for review. As it stands, however, the Fourth Amendment provides for warrantless entries where "a reasonable officer would have believed that . . . an emergency existed." *State v. Blades*, 225 Conn. 609, 618 (1993). This is so even if an occupant of the premises denies his consent for law enforcement to enter them. Given the testimony of officers in this case that they were concerned with the safety of Doreen Storer, it is

certainly possibly that, had petitioner moved to suppress their testimony regarding what occurred after they entered petitioner's home, they could have adduced sufficient evidence to satisfy the emergency exception. For that reason, the record in this case was truly inadequate for *Golding* review.

Although petitioner, in his federal habeas corpus petition, "petition in opposition to motion to dismiss," and "amended declaration in opposition to respondents motion to dismiss" cites many cases, none of them are responsive to *Powell* or the exceptions to its general rule against reviewability of Fourth Amendment claims in federal habeas corpus actions. For instance, petitioner principally relies on *Georgia v. Randolph*, 547 U.S. 103 (2006), in which the Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph*, 547 U.S. 103, 120 (U.S. 2006). Not only is *Randolph* not responsive to *Powell*, but it does not even establish that the police in the instant case unlawfully entered petitioner's home. Rather, *Randolph* explicitly states that the need for law enforcement to protect someone inside a home could justify entry of the premises. *Id.* at 123. The other cases petitioner cites are of no greater benefit to him.

For the foregoing reasons, respondents' motion to dismiss is granted.

It is SO ORDERED.

Dated: New Haven, Connecticut
      March 31, 2009

                          /s/ Charles S. Haight, Jr.
                      SENIOR UNITED STATES DISTRICT JUDGE